UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

− − − − − − − − − − − − − − − − − − − − − − − − − − − − − − − x

AL KHADLAJ PERFUMES INDUSTRIES L.L.C.,

                 Plaintiff,                        **COMPLAINT**

    -against-                           Civ. Action No. 24-cv-5427

AROMA CONCEPTS LLC, MHAYTECH LLC, and
SHERAZ ISHAQUE,

                 Defendants.

− − − − − − − − − − − − − − − − − − − − − − − − − − − − − − − x

       Plaintiff, Al Khadlaj Perfumes Industries L.L.C. ("Plaintiff" or "Khadlaj Perfumes"), by its attorney, Ruskin Moscou Faltischek, P.C., as and for its complaint against defendants Aroma Concepts LLC, Mhaytech LLC, and Sheraz Ishaque ("Defendants"), alleges as follows:

## NATURE OF ACTION

    1.    This action arises from Defendants' willful disregard for Khadlaj Perfumes' rights to the HAREEM AL SULTAN trademarks in connection with, *inter alia*, perfumes, including:



    2.    After being terminated as an authorized re-seller of Khadlaj Perfumes' HAREEM AL SULTAN family of perfumes in the United States, Defendants, without authorization, created their own "version" of HAREEM AL SULTAN, which they market as "Hareem Al Sultan Intense," in blatant violation of Khadlaj's trademark rights and without any regard for Khadlaj Perfumes' quality standards.

3.      On or about July 10, 2024, Khadlaj Perfumes served a cease and desist letter to protect its rights.

4.      Caught red-handed, by on or about July 12, 2024, Defendants ceased advertising, promoting, offering for sale, and selling, among other things, perfumes using the infringing marks "Hareem Al Sultan Intense" and

<div dir="rtl" align="center">حريم السلطان</div>

through their interactive website located at www.aromaconcepts.com and on TikTok Shop.

5.      Defendants' paid influencers continued to promote the infringing "Hareem Al Sultan Intense" products until on or about July 24, 2024.

6.      By that time, the damage was done. Upon information and belief, Defendants had sold thousands of bottles of their infringing "Hareem Al Sultan Intense" perfume. Indeed, Defendants sold nearly 2,000 bottles on TikTok Shop alone.

7.      As a result of Defendants' blatant infringement of Khadlaj Perfumes' HAREEM AL SULTAN trademarks, Khadlaj Perfumes brings this action for: (i) infringement of Khadlaj's HAREEM AL SULTAN trademarks, unfair competition, and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and New York common law; and (ii) violating N.Y. Gen. Bus. Law § 349 by using Plaintiff's name with intent to deceive or mislead the public, arising from Defendants' use of Plaintiff's HAREEM AL SULTAN trademarks in connection with the marketing, advertising, promotion, offering for sale and/or sale of Defendants' "Hareem Al Sultan Intense" perfume.

8.      Plaintiff seeks injunctive and monetary relief.

## PARTIES

9.      Plaintiff, Al Khadlaj Perfumes Industries L.L.C., is a limited liability company under the laws of the United Arab Emirates (UAE) with its principal place of business located at Industrial Area 11, Sharjah, UAE.

10.      Upon information and belief, defendant Aroma Concepts LLC ("Aroma Concepts") is a Florida limited liability company with its principal place of business located at 4632 36th Street, Suite 200, Orlando, Florida 32811.

11.      Upon information and belief, defendant Mhaytech LLC ("Mhaytech") is a Wyoming limited liability company with its principal place of business located at 9 Umpire Close, Birmingham, United Kingdom, B17 8BD.

12.      Upon information and belief, defendant Sheraz Ishaque is an individual residing in the United Kingdom and is the manager and/or principal of both Aroma Concepts and Mhaytech.

## JURISDICTION AND VENUE

13.      The Court has jurisdiction over this case pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331 and 1338(a) and (b), and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

14.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

## BACKGROUND

**A.      Khadlaj and the HAREEM AL SULTAN Marks**

15.      Khadlaj Perfumes is a family-owned, UAE-based perfume house.

16.      Khadlaj Perfumes was established in January 1997.

17.      Mohamed Iqbal Abdul Sattar founded Khadlaj Perfumes with a passion and dream to create unique and unforgettable fragrances.

18.     Mr. Iqbal is Khadlaj Perfumes' master perfumer.

19.     Mr. Iqbal has more than 40 years of experience in the perfume industry.

20.     Mr. Iqbal has fulfilled his vision to create a brand which caters to all fragrance preferences and diverse fragrance cultures globally.

21.     Mr. Iqbal believes in the use of the finest ingredients in "perfumery" that are encased in exclusive flacons to give an experience that engages the senses and provides an unmatched experience.

22.     Mr. Iqbal and Khadlaj Perfumes have a vision to be a trustworthy brand in the perfume industry and to make his brand a household name.

23.     A cornerstone of Khadlaj Perfumes' success has been its quality assurance, following its motto: "adherence to authentic components for making quality products at great value."

24.     Khadlaj Perfumes follows stringent measures to produce quality products from its state-of-the-art and ISO (International Organization for Standardization) 9001 certified manufacturing facility in Sharjah, UAE.

25.     Khadlaj Perfumes' facility is also GMP (Good Manufacturing Practices) certified by the NSF (National Science Foundation) to ensure that its products are consistently produced and controlled according to quality standards.

26.     Khadlaj Perfumes' products are examined at every stage of production to ensure compliance of physical and chemical properties, which are free from microbial, hazardous, and other unwanted chemical contaminants.

27.     Khadlaj Perfumes' mission is to have a global reach through its retail partners.

28.     Fragrances at Khadlaj Perfumes are a unique and innovative blend of Arabic, Occidental, and niche fragrances.

29.     One of Khadlaj Perfumes' biggest successes has been with its HAREEM AL SULTAN line of perfumes.

30.     Khadlaj Perfumes first offered for sale its HAREEM AL SULTAN Silver and HAREEM AL SULTAN Gold perfume oils in or about May 2015.

31.     HAREEM AL SULTAN Gold features a tropical scent.

32.     HAREEM AL SULTAN Silver features a floral scent.

33.     HAREEM AL SULTAN Silver and HAREEM AL SULTAN Gold have been, and continue to be, sold in the United States, including in New York, through, *inter alia*, Khadlaj Perfumes' own interactive website, the interactive websites of its U.S. customers and distributor, Amazon, and TikTok Shop.

34.     A recent screenshot of HAREEM AL SULTAN Gold as offered for sale on Khadlaj Perfumes interactive website where HAREEM AL SULTAN Gold can be purchased on the internet for sale in New York and elsewhere in the United States is attached as Exhibit 1.

35.     A recent screenshot of HAREEM AL SULTAN Silver as offered for sale on Khadlaj Perfumes interactive website where HAREEM AL SULTAN Silver can be purchased on the internet for sale in New York and elsewhere in the United States is attached as Exhibit 2.

36.     Khadlaj Perfumes recently offered for sale in the United States its HAREEM AL SULTAN Blue perfume oil on or about October 25, 2023.

37.     HAREEM AL SULTAN Blue features a unisex muskier version of the HAREEM AL SULTAN Gold tropical scent.

38.     Beginning on or about November 27, 2023, Khadlaj Perfumes also offered for sale in the United States its long-standing HAREEM AL SULTAN Gold eau de parfum spray in a more exclusive bottle.

39.     A recent screenshot of HAREEM AL SULTAN eau de parfum spray as offered for sale on Khadlaj Perfumes' interactive website where HAREEM AL SULTAN eau de parfum spray can be purchased on the internet for sale in New York and elsewhere in the United States is attached as Exhibit 3.

40.     The HAREEM AL SULTAN eau de parfum spray has the same tropical scent as HAREEM AL SULTAN Gold.

41.     The HAREEM AL SULTAN  perfumes are all advertised, promoted, offered for sale, and sold globally, including in the United States, under the following trademarks:

HAREEM
AL SULTAN



(the "HAREEM AL SULTAN Marks").

42.     The Arabic writing above the English "Hareem Al Sultan" in the second mark transliterates to "HAREEM AL SULTAN" and this means "WIFE OF THE SULTAN" in English.

43.     The HAREEM AL SULTAN Marks are inherently distinctive.

44.     The HAREEM AL SULTAN Marks are neither generic nor descriptive of the goods sold under them by Khadlaj Perfumes.

6

45.     On or about July 12, 2023, Khadlaj Perfumes filed separate trademark applications for the aforesaid word mark HAREEM AL SULTAN and word mark with Arabic letters,



(the "HAREEM AL SULATN Applications") as follows:

 i. U.S. Serial No. 98081449 on the Principal Register in the United States Patent and Trademark Office ("USPTO") for HAREEM AL SULTAN in International Class 03 in connection with, *inter alia*, perfumery and perfumes; and

 ii. U.S. Serial No. 98081456 on the Principal Register in the USPTO for



  in International Class 03 in connection with, *inter alia*, perfumery and perfumes.

46.     Both HAREEM AL SULTAN Marks have a date of first use in commerce of at least as early as May 5, 2015.

47.     Khadlaj Perfumes has advertised, promoted, offered for sale, and sold perfumes under the HAREEM AL SULTAN Marks through: (i) its interactive website www.khadlaj-perfumes.com which bears Khadlaj Perfumes' registered house mark



KHADLAJ

;

(ii) various online retail marketplaces, such as Amazon and TikTok Shop, from which HAREEM

AL SULTAN product has been sold to end-users in the United States; and (iii) its U.S.-based

distributor, customers, and re-sellers, who are located in New York, New Jersey, Florida,

Georgia, Illinois, Minnesota, Nebraska, Texas, and Virginia, and who sell product to end-users

on interactive websites and/or in stores.

48.    As a result of Khadlaj Perfumes' expenditure of substantial sums in establishing,

maintaining and promoting the HAREEM AL SULTAN Marks, such Marks have acquired

incalculable distinction, reputation, and goodwill all belonging to Khadlaj Perfumes.

49.    The HAREEM AL SULTAN Marks and the goods offered thereunder have

received unsolicited media coverage greatly enhancing the strength of Plaintiff's brand. For

example, HAREEM AL SULTAN has been featured in Perez Hilton's online magazine.

50.    HAREEM AL SULTAN has also been promoted by well-known influencers,

including, among others, Taj Noir @taj.noir, Demi Rawling @demi.rawling, Karina Waldron

@karinawaldron, and Avery Mills @o.m.a.ver.y.

51.    In or about April 2023, Taj Noir's unsolicited promotional post of HAREEM AL

SULTAN Gold on TikTok went viral leading to significantly increased sales in the United States.

52.    Following Taj Noir's TikTok viral video promoting HAREEM AL SULTAN

Gold, Khadlaj Perfumes then-authorized U.S. reseller, defendant Aroma Concepts, used a paid

influencer, Avery Mills, to promote HAREEM AL SULTAN perfumes.

8

53.     Avery Mills' promotional social media video led to the further success of the HAREEM AL SULTAN brand.

**B.      Defendants' Unlawful Conduct**

54.     In or about 2019, defendant Sheraz Ishaque went to the UAE to meet with Khadlaj Perfumes and first sought to resell Khadlaj Perfumes' products in the United Kingdom.

55.     Defendant Sheraz Ishaque then began to sell Khadlaj Perfumes' products in the United States through defendant Aroma Concepts.

56.     Defendant Sheraz Ishaque founded Aroma Concepts on or about November 1, 2021.

57.     From in or about January 2020 to December 2023, Aroma Concepts was an authorized reseller of HAREEM AL SULTAN for Khadlaj Perfumes throughout the United States, including New York, through, *inter alia*, Aroma Concepts' interactive website and TikTok Shop.

58.     Without authorization from Khadlaj Perfumes, in or about June 2023, defendant Aroma Concepts began to offer for sale a smaller, 12 milliliter (ml) travel size of HAREEM AL SULTAN perfume.

59.     Upon information and belief, the 12 ml travel size did not contain authentic perfume manufactured by Khadlaj Perfumes under its strict quality assurance guidelines.

60.     Beginning with the sale of the unauthorized and illegitimate travel size, Khadlaj Perfumes realized that defendant Sheraz Ishaque was only interested in promoting and marketing himself and Aroma Concepts rather than Khadlaj Perfumes.

61.    It has become clear that defendant Sheraz Ishaque through defendants Aroma Concepts and Mhaytech has hatched a plan to steal the HAREEM AL SULTAN brand from Khadlaj Perfumes.

62.    Upon information and belief, on or about April 26, 2023, unbeknownst to Khadlaj Perfumes, defendant Sheraz Ishaque formed defendant Mhaytech in the State of Wyoming.

63.    On or about May 23, 2023, unbeknownst to Khadlaj Perfumes, defendant Sheraz Ishaque caused defendant Mhaytech to file an intent-to-use trademark application in the USPTO for HAREEM AL SULTAN in Arabic for fragrances and perfumes (U.S. Serial No. 98008882) as follows (the "Mhaytech Application"):

حريم السلطان

64.    The Mhaytech Application was signed by defendant Sheraz Ishaque.

65.    Defendant Mhaytech used a Birmingham, United Kingdom address in the Mhaytech Application.

66.    In the Mhaytech Application Declaration, defendant Sheraz Ishaque made the following representations which were knowingly false:

[INTENTIONALLY LEFT BLANK]

10

<div align="center">Declaration</div>

☑ **Basis:**
**If the applicant is filing the application based on use in commerce under 15 U.S.C. § 1051(a):**

- The signatory believes that the applicant is the owner of the trademark/service mark sought to be registered;
- The mark is in use in commerce and was in use in commerce as the filing date of the application on or in connection with the goods/services in the application;
- The specimen(s) shows the mark as used on or in connection with the goods/services in the application and was used on or in connection with the goods/services in the application as of the application filing date; and
- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

**And/Or**
**If the applicant is filing the application based on an intent to use the mark in commerce under 15 U.S.C. § 1051(b), § 1126(d), and/or § 1126(e):**

- The signatory believes that the applicant is entitled to use the mark in commerce;
- The applicant has a bona fide intention to use the mark in commerce and had a bona fide intention to use the mark in commerce as of the application filing date on or in connection with the goods/services in the application; and
- To the best of the signatory's knowledge and belief, the facts recited in the application are accurate.

☑ To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive.

☑ To the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support.

☑ The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

**Declaration Signature**

Signature: /Sheraz ishaque/   Date: 05/23/2023
Signatory's Name: Sheraz Ishaque
Signatory's Position: Principal
Signatory's Phone Number: 3073163756
Signature method: Sent to third party for signature
Payment Sale Number: 98008882
Payment Accounting Date: 05/23/2023

Serial Number: 98008882
Internet Transmission Date: Tue May 23 12:03:22 ET 2023
TEAS Stamp: USPTO/FTK-XX.XXX.XXX.XXX-20230523120322 7
69006-98008882-86028b5febe952a9545b48c96
42e50a01844bcca7972ae7e595e382188abea93d
6-CC-03225410-20230518104801758202

67.     At the time of the Mhaytech Application, defendant Sheraz Ishaque knew that Khadlaj Perfumes had a superior right to use the HAREEM AL SULTAN Marks in commerce.

68.     The Mhaytech Application is currently blocking Khadlaj Perfumes' HAREEM AL SULTAN Applications from proceeding to registration.

69.     In or about December 2023, Khadlaj Perfumes terminated its relationship with Aroma Concepts.

70.     In or about February 2024, Universal Perfumes & Cosmetics, based in Hauppauge, New York, became Khadlaj Perfumes' exclusive U.S. distributor.

71.     On or about March 16, 2024, defendant Sheraz Ishaque threatened to retaliate against Khadlaj Perfumes.

72.     On or about June 28, 2024, which was long after Khadlaj Perfumes acquired protectable, exclusive rights in its HAREEM AL SULTAN Marks, Khadlaj Perfumes discovered that Defendants, without Khadlaj Perfumes' authorization, adopted and began using a mark identical and/or confusingly similar to Plaintiff's HAREEM AL SULTAN Marks in U.S.

<div dir="rtl">حريم السلطان</div>

commerce, including                    and "Hareem Al Sultan Intense" (the "Infringing Marks") for perfume, as follows:



A screenshot of Defendants' perfume sold under the Infringing Marks on Aroma Concepts' interactive website is above and attached as <u>Exhibit 4</u>.

73.    The Infringing Marks adopted and used by Defendants are identical and/or confusingly similar to Khadlaj Perfumes' HAREEM AL SULTAN Marks in sight, sound and commercial impression:

**Khadlaj's Perfumes' Product**                          **Aroma Concepts' Product**




74.    Defendants have also begun to sell a body butter using the Infringing Marks with the same fragrance:

[INTENTIONALLY LEFT BLANK]



A screenshot of Defendants' body butter sold under the Infringing Marks on Aroma Concepts' interactive website is as above and attached as <u>Exhibit 5</u>.

75.    From on or about June 28, 2024 to on or about July 12, 2024, Defendants engaged in the advertising, promotion, offering for sale, and sale of perfume, using the Infringing Marks throughout the United States, including in New York, through, *inter alia*, Aroma Concepts' interactive website, <u>www.aromaconcepts.com</u>, and the same online marketplaces, including TikTok Shop.

76.    Defendants also had paid influencers, including Avery Mills, promote their products with the Infringing Marks on TikTok, causing harm to Khadlaj Perfumes' HAREEM AL SULTAN brand.

77.    In particular, Defendants' promotion of their perfume under the Infringing Marks using the same social media influencer as Khadlaj Perfumes, Avery Mills, who specifically

promoted Defendants' imposter perfume as a "new version" of Khadlaj Perfumes' HAREEM AL SULTAN has caused significant harm to Khadlaj Perfumes' HAREEM AL SULTAN brand.

78.    Customers are still confused as to the manufacturer of HAREEM AL SULTAN perfumes.

79.    Upon information and belief, Aroma Concepts made 1,384 sales of their product under the Infringing Marks on TikTok alone.

80.    At all relevant times Defendants were aware of, and knew about, Plaintiff and its HAREEM AL SULTAN Marks.

81.    On or about July 10, 2024, Plaintiff's counsel sent a cease and desist letter to Defendants objecting to Defendants' use of the Infringing Marks. A copy of Plaintiff's cease and desist letter is attached hereto as Exhibit 6.

82.    By on or about July 12, 2024, Defendants ceased using their Infringing Marks on perfume on their website www.aromaconcepts.com and TikTok Shop.

83.    The paid influencers, however, continued to promote Defendants' product under the Infringing Marks on TikTok even after sales ceased causing further confusion in the marketplace and harm to Khadlaj Perfumes' HAREEM AL SULTAN brand.

84.    Between July 13, 2024, and July 23, 2024, Khadlaj Perfumes' counsel continued to correspond with Defendants' counsel concerning the paid influencers' infringing videos on TikTok.

85.    The infringing videos were not removed until on or about July 24, 2024.

86.    Defendants' infringing acts as alleged herein have caused and are likely to continue to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of both Plaintiff's HAREEM AL SULTAN perfumes and Defendants'

perfume "Hareem Al Sultan Intense," and have and are likely to deceive the relevant consuming public into believing, mistakenly, that Defendants' perfume "Hareem Al Sultan Intense" originates from, or is associated or affiliated with, or endorsed by, sponsored by, licensed by, or otherwise authorized by Plaintiff, or that Plaintiff's HAREEM AL SULTAN perfumes originate from Defendants, all of which are untrue.

87.    Defendants' use of the Infringing Marks was being done with reckless disregard for Plaintiff's trademark rights and with purposeful intent to trade and profit on Plaintiff's goodwill.

88.    Defendants' acts have caused, and unless permanently restrained, will continue to cause damage and irreparable harm to Plaintiff and to its valuable reputation and goodwill with the consuming public for which Plaintiff has no adequate remedy at law.

### AS AND FOR A FIRST CAUSE OF ACTION
**(Federal Unfair Competition)**

89.    Plaintiff repeats and realleges the foregoing paragraphs 1 to 88 with the same force and effect as if fully set forth hereat.

90.    Defendants' unauthorized use in commerce of the HAREEM AL SULTAN Marks has likely deceived consumers as to the origin, source, sponsorship, or affiliation of Defedants' goods and/or services, and has likely caused consumers to believe, contrary to fact, that Defendants' goods and/or services are/were sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendants are in some way affiliated with or licensed by Plaintiff.

91.    Defendants' unauthorized use in commerce of the HAREEM AL SULTAN Marks as alleged herein constitutes trademark infringement, use of a false designation of origin, and a misleading description and representation of fact.

16

92.     Upon information and belief, Defendants' conduct as alleged herein is/was willful and is/was intended to and likely caused, and may continue to cause, confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiff.

93.     Defendants' conduct as alleged herein constitutes unfair competition in violation of Sections 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

94.     Defendants' conduct as alleged herein is causing, or has caused, immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless permanently enjoined by this Court.

95.     Plaintiff has no adequate remedy at law.

96.     Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116 and 1117, together with prejudgment and post-judgment interest.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Common Law Trademark Infringement and Unfair Competition)

97.     Plaintiff repeats and realleges the foregoing paragraphs 1 to 96 with the same force and effect as if fully set forth hereat.

98.     Defendants' actions, as described herein, have, or are likely to, cause confusion, or to cause mistake, or to deceive the public regarding the origin, sponsorship, affiliation, connection, association, or approval of Defendants' goods and/or services, such that Defendants' acts constitute infringement of Plaintiff's right to use the HAREEM AL SULTAN Marks, misappropriation of the goodwill in the HAREEM AL SULTAN Marks, and unfair competition under New York common law.

99.     As a direct and proximate result of the willful actions, conduct, and practices of Defendants, they have been unjustly enriched and Plaintiff has been damaged and will continue to be irreparably harmed unless Defendants' unlawful conduct is enjoined.

<div align="center">

**AS AND FOR A SIXTH CAUSE OF ACTION**
**(Violation of New York General Business Law § 349)**

</div>

100.     Plaintiff repeats and realleges the foregoing paragraphs 1 to 99 with the same force and effect as if fully set forth hereat.

101.     Defendants' actions described herein: (i) are/were consumer oriented; (ii) constitute, or constituted, deceptive acts or practices in the conduct of a business, trade, and commerce in New York in a material way; and (iii) caused, or are causing, Plaintiff injury as a result of such deceptive and misleading activities in violation of N.Y. Gen. Bus. Law § 349.

102.     The actions of Defendants described herein have at all times relevant to this action been willful and knowing.

103.     As a direct result of Defendants' deceptive trade practices Plaintiff has been damaged and will continue to be irreparably harmed unless Defendants' unlawful conduct is enjoined.

**WHEREFORE**, Plaintiff, Al Khadlaj Perfumes Industries L.L.C., requests judgment against defendants Aroma Concepts LLC, Mhaytech LLC, and Sheraz Ishaque as follows:

A.     Declaring that Defendants have violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

B.     Declaring that Defendants have violated New York State's unfair competition laws, including, without limitation, N.Y. Gen. Bus. Law § 349;

C.     Granting an injunction permanently enjoining Defendants, their employees, members, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns,

and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise from:

i.  distributing/providing, selling, marketing, advertising, promoting, offering for sale, selling, or authorizing any third party to distribute/provide, offer for sale, sell, market, advertise or promote perfumes and/or related goods bearing the HAREEM AL SULTAN Marks or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the HAREEM AL SULTAN Marks, including "Hareem Al Sultan Intense" and "Hareem Al Sultan Body Butter Fragrance;"

ii.  engaging in any activity that infringes Plaintiff's rights in the HAREEM AL SULTAN Marks;

iii.  engaging in any activity constituting unfair competition with Plaintiff, including, without limitation, the use of the HAREEM AL SULTAN Marks, or any part thereof;

iv.  making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe (1) that Defendants' goods and/or services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with, Plaintiff; or (2) that Plaintiff's goods and/or services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with, Defendants;

v.  using or authorizing any third party to use in connection with any business, goods or services any false description, false representation, or false designation of

origin, or any marks, names, words, domain names, symbols, devices, or trade dress that falsely associate such business, goods and/or services with Plaintiff or tend to do so;

vi.    registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the HAREEM AL SULTAN Marks or any other mark that infringes or is likely to be confused with Plaintiff's marks, or any goods or services of Plaintiff, or Plaintiff as their source without Plaintiff's express written consent; and

vii.    aiding, assisting, or abetting any other individual or entity in doing any act prohibited by subparagraphs (i) through (vi).

D.    Declaring that Mhaytech LLC's trademark application U.S. Serial No. 98008882 is deemed withdrawn and abandoned;

E.    Granting such other and further relief as the Court may deem proper to prevent the public and trade from deriving the false impression that any goods or services made, prepared, manufactured, sold, distributed, licensed, marketed, advertised, promoted, or otherwise offered or circulated by Defendants are in any way approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff or constitute or are connected with Plaintiff's goods and services;

F.    Directing Defendants to immediately cease all preparation, manufacture, display, distribution, marketing, advertising, promotion, sale, offer for sale and/or use of any and all domain names, packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials that feature or bear any designation or mark incorporating the

HAREEM AL SULTAN Marks or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the HAREEM AL SULTAN Marks in connection with perfumes and/or related goods;

G.      Directing that Defendants recall and deliver up for destruction or other disposition all goods, packaging, shopping bags, containers, advertisements, promotions, signs, displays, and related materials incorporating or bearing the HAREEM AL SULTAN Marks, or any other mark that is a counterfeit, copy, confusingly similar variation, or colorable imitation of the HAREEM AL SULTAN Marks, including, without limitation, "Hareem Al Sultan Intense" and "Hareem Al Sultan Body Butter Fragrance;"

H.      Directing, pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1116(a), Defendants to file with the Court and serve upon Plaintiff's counsel within thirty (30) days after service on Defendants of an injunction in this action, or such extended period as the Court may direct, a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied therewith;

I.      Directing that Defendants account to and pay over to Plaintiff all profits realized by their wrongful acts in accordance with Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a), enhanced as appropriate to compensate Plaintiff for the damages caused thereby;

J.      Awarding Plaintiff damages and injunctive relief as set forth herein under Gen. Bus. Law § 349 as well as New York common law;

K.      Awarding Plaintiff punitive and exemplary damages as the Court finds appropriate to deter any future willful infringement;

L.      Declaring that this is an exceptional case pursuant to Section 35(a) of the Lanham Act and awarding Plaintiff its costs and reasonable attorneys' fees thereunder (15 U.S.C. § 1117(a)); and

M.      Awarding such other and further relief as the Court deems just and proper.

Dated: Uniondale, New York
        August 2, 2024

                                    RUSKIN MOSCOU FALTISCHEK, P.C.


                            By:_____/s/ Thomas A. Telesca_____
                                    Thomas A. Telesca, Esq.
                                    John A. DeMaro, Esq.
                                    *Attorney for Plaintiff*
                                    1425 RXR Plaza
                                    East Tower, 15th Floor
                                    Uniondale, New York 11556
                                    (516) 663-6600

                                                            1030988